UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FAMILY FOOT AND LEG CENTER, P.A.,

    Plaintiff,

v.                                                                       No. 2:24-cv-00547-SPC-KCD

ROBERT F. KENNEDY, JR., Secretary,
U.S. Department of Health and Human
Services;[1] and Mehmet Oz, M.D., Administrator
for the Centers for Medicare & Medicaid Services,[2]

    Defendants.
_____/

**BRIEF OF THE SECRETARY OF THE UNITED
STATES DEPARTMENT OF HEALTH AND HUMAN
SERVICES IN SUPPORT OF THE FINAL AGENCY DECISION**

Robert F. Kennedy, Jr., in his official capacity as the Secretary of the United States Department of Health and Human Services ("Secretary") properly denied six claims for Medicare payment submitted by Plaintiff Family Foot and Leg Center, P.A. for its use of Procenta, a medical product derived from human placenta.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Secretary Kennedy is automatically substituted for his predecessor Xavier Becerra.

[2] Pursuant to Fed. R. Civ. P. 25(d), Mehmet Oz, M.D. is automatically substituted for his predecessor Chiquita Brooks-LaSure.  However, the Secretary is the sole proper defendant in this civil action.  *See* 42 C.F.R. § 405.1136(d)(1) ("In any civil action [for review of a final agency decision], the Secretary of HHS, in his or her official capacity, is the proper defendant").

Procenta was designed to treat non-healing wounds. Plaintiff, however, injected Procenta into the joints of Medicare beneficiaries to treat musculoskeletal issues.

The Medicare Appeal Council ("Council") properly determined that the treatments were not reasonable and necessary—the statutory criteria for Medicare payment—because Plaintiff failed to demonstrate Procenta was safe and effective, not experimental or investigational, and appropriate for treatment of the six beneficiaries' conditions. In reaching its decision, the Council carefully examined the entire record, including the medical literature submitted by Plaintiff, and applied the correct Medicare authorities. The Council's decision is consistent with the applicable authorities and is supported by substantial evidence in the Administrative Record. The decision should therefore be affirmed.

In its opening brief, Plaintiff argues that a favorable decision it received at a lower level of administrative review was correct. But that is not the decision under review before this Court. In any event, the lower-level decision failed to undertake the proper review and made conclusory findings based on a letter issued by the Food and Drug Administration indicating that Procenta met certain requirements of the Public Health and Safety Act when used as a wound covering. The letter was not part of the administrative record before the agency. Moreover, an FDA finding is not determinative of Medicare coverage.

Plaintiff also asserts that its use of Procenta was supported by medical literature. However, as the Council correctly observed, none of the medical literature examined Procenta, and none offered sufficient support for Plaintiff's use of Procenta

as an injectable to treat the beneficiaries' conditions. The final agency decision of the Secretary therefore properly denied payment for Plaintiff's six Medicare claims.

## STATUTORY FRAMEWORK

This case involves Medicare Part B, which makes payments for covered services provided by physicians and other non-hospital providers, 42 U.S.C. §§ 1395j-1395w-1, along with covered "medical and other health services" that are "reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member[,]" 42 U.S.C § 1395x; 42 U.S.C. § 1395y(a)(1)(A); 42 C.F.R. § 411.15(k).  No claim for payment under the Medicare program may be paid unless the service for which payment is sought is "reasonable and necessary for the diagnosis or treatment of illness or injury." 42 U.S.C. § 1395y(a)(1)(A); 42 U.S.C. § 1395u. A healthcare supplier bears the burden of affirmatively establishing that Medicare payment is due under the applicable statute, regulations, guidance materials, and standards of medical practice. 42 U.S.C. § 1395*l*(e); 42 C.F.R. § 424.5(a)(6).

The Medicare statute and accompanying regulations create a five-step appeals process for a supplier dissatisfied with a denial of its Medicare claims.  First, the supplier can seek redetermination from the Medicare contractor that processed the claim. 42 U.S.C. § 1395ff(a)(3). Then, the supplier can seek reconsideration by a Qualified Independent Contractor (QIC). *Id*. § 1395ff(b)(1), (c). Next, a supplier can request a hearing before an administrative law judge. *Id*. § 1395ff(d)(1). The final level of administrative review is performed by the Council. *Id*. at § 1395ff(d)(2). The

Council's decision stands as the final decision of the Secretary. *See* 42 C.F.R. § 405.904(a). If the supplier is dissatisfied with the Council's decision, the supplier can bring a timely civil action in federal court for review of the Council's decision. 42 U.S.C. § 1395ff(b)(1)(A) (incorporating 42 U.S.C. § 405(g)).

## STATEMENT OF FACTS

Between February 9, 2022, and June 10, 2022, Plaintiff gave injections of Procenta to six Medicare beneficiaries for musculoskeletal issues. Plaintiff injected Procenta into the joints of beneficiaries to treat osteophytes (bone spurs) or enthesopathy (a condition impacting the connection point between bone and tendons or ligaments) in the beneficiaries' feet, ankles, or knees. AR at 251-52 (Beneficiary R.M., Date of Service (DOS) – May 9, 2022); AR at 268-270 (Beneficiary P.V., DOS – June 10, 2022); AR at 278, 280-81 (Beneficiary L.E., DOS – June 1, 2022); AR at 293-294 (Beneficiary D.B., DOS – Apr. 22, 2022); AR at 11-312 (Beneficiary H.R., DOS - May 16, 2022); and AR at 1220 (Beneficiary K.C., DOS – Feb. 9, 2022); *see also* AR at 5.[3] In each instance, Plaintiff injected Procenta into the beneficiary's affected joint to increase function or decrease pain. *See id.*

Plaintiff submitted claims for Medicare payment for these uses of Procenta. *See* AR at 1667-68, 1679, 1690, 1701,1710, 1719. Plaintiff billed Medicare using

---

[3] "AR" abbreviates the Administrative Record located at Docket Entry 20. Pin citations of the Administrative Record correspond to the page numbers located on the bottom right-hand corner of each page in the record.

HCPCS[4] Q4244 for the Procenta treatments and additional codes for services related to the injections. AR at 1166-72. CMS assigned HCPCS code Q4244 to Procenta on the basis of an application filed with CMS that identified Procenta as a wound covering "to treat chronic non-healing wounds." AR at 371; *see also* AR at 684-85.

Each of Plaintiff's Medicare claims was denied. AR at 1166-72. Plaintiff requested redetermination before First Coast Service Options (FCSO), a Medicare administrative contractor. FCSO upheld the denials of the claims for payment. AR at 1667-71, 1678-82, 1689-93, 1700-03, 1709-12, 1718-22. Plaintiff then sought reconsideration before a QIC. The QIC also denied the claims, finding "Procenta has not been proved to be safe and effective" for treatment of the beneficiaries' conditions, and therefore its usage was "considered investigational/experimental and non-covered" by Medicare. AR at 702; *see also* AR at 697-754.

Plaintiff appealed to an Administrative Law Judge (ALJ) in the Office of Medicare Hearing and Appeals. AR at 758-77. The ALJ issued a fully favorable Amended Decision on November 27, 2023. AR at 81-99.[5] Upon request by CMS, AR at 61-73, the Medicare Appeals Council took up review of the ALJ's Decision. 42 C.F.R. § 405.1110(a), (b)(1).

---

[4] When a supplier submits a claim to Medicare, the supplier includes a Health Common Procedure Code System (HCPCS) code to identify the service for which payment is being sought. HCPCS is a coding system developed by the Centers for Medicare & Medicaid Services (CMS), an agency of the Secretary, for the processing of Medicare claims. 42 C.F.R. §§ 414.2, 414.40; *see also* AR at 61, n.3.

[5] The "Amended" Decision was issued for the purpose of correcting clerical errors. AR at 81.

On April 15, 2024, the Council issued the Secretary's final decision. AR at 4-15. The Council explained that the ALJ failed (1) to undertake the correct analysis for determining whether Procenta was reasonable and necessary for treatment of the beneficiaries' specific conditions, (2) relied on materials that were not in the administrative record, and (3) made conclusory findings about the medical literature. AR at 6-8. Upon review of the entire record, the Council determined that Medicare Part B payment was not authorized for the Procenta injections and related services furnished to the six beneficiaries at issue. AR at 8-13. The Council further found that the Plaintiff was liable for the costs. AR at 13-14.  Plaintiff filed the instant action seeking judicial review of that decision.  Doc. 2.

## STANDARD OF REVIEW

This action is brought under 42 U.S.C. § 139ff(b)(1), which incorporates 42 U.S.C. § 405(g), the judicial review provision of the Social Security Act.  Section 405(g) defines the scope and standard of the Court's review.  Under that section, "judicial review of the Secretary's decision regarding a claim for Medicare benefits is limited to whether there is substantial evidence to support the findings" of the Secretary and "whether the correct legal standards were applied." *Gulfcoast Med. Supply, Inc. v. Sec'y, Dep't of Health & Hum. Servs.*, 468 F.3d 1347, 1350 n.3 (11th Cir. 2006).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Fla. Med. Ctr. of Clearwater, Inc. v. Sebelius*, 614 F.3d 1276, 1280 (11th Cir. 2010) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).  Under the substantial evidence standard, the

court does "not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Secretary]." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1258 (11th Cir. 2019). In conducting its review, the court "may only scrutinize the record." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (citations omitted).

## ARGUMENT

The Secretary properly denied Plaintiff's claims for Medicare payment of the Procenta injections and related services rendered to the six beneficiaries. Plaintiff took a product designed as a wound covering and injected it into the joints of the six Medicare beneficiaries. The product information and Medicare billing information did not support this use. Nor did the medical literature submitted by Plaintiff offer sufficient clinical support to justify Medicare payment of this use. The Council's decision—the final agency decision on review—comports with the applicable authorities and is supported by substantial evidence in the Administrative Record.

**I.    The Council's decision to deny payment should be affirmed.**

Medical reasonableness and necessity have always been the touchstone of Medicare payment decisions. Since its enactment in 1965, the Medicare Act has provided,

> Notwithstanding any other provision of this title, no payment may be made under Part A or Part B for any expenses incurred for items or services . . . which . . . are not reasonable and necessary for the diagnosis or treatment of illness . . . .

42 U.S.C. § 1395y(a)(1)(A).

Congress has vested final authority in the Secretary to determine what items or services are reasonable and necessary:

> The determination of whether an individual is entitled to benefits under part A or part B of this subchapter, and the determination of the amount of benefits under [Medicare] . . . *shall be made by the Secretary* in accordance with regulations prescribed by him.

42 U.S.C. § 1395ff(a) (emphasis added). The Secretary's discretion extends to decisions about whether a particular item or service is medically reasonable and necessary. *Heckler v. Ringer*, 466 U.S. 602, 617 (1984).

The Secretary is the sole and final arbiter on questions of Medicare coverage. Deference is due because the Medicare statute "is among the most intricate ever drafted by Congress," and Congress accordingly has "conferred on the Secretary exceptionally broad authority to prescribe standards" for applying the statute. *Schweiker v. Gray Panthers*, 453 U.S. 34, 43 (1981); *see also In re Madeline Marie Nursing Homes*, 694 F.2d 433, 440 (6th Cir. 1982).

Indeed, courts have approved the Secretary's judgments that entire categories of services are not reasonable and necessary, regardless of what a particular physician may have recommended. *See, e.g., Goodman v. Sullivan*, 891 F.2d 449, 451 (2d Cir. 1989) (upholding denial of coverage of MRI); *Friedrich v. Sec'y of Dep't of Health & Hum. Servs.*, 894 F.2d 829, 831, 837 (6th Cir. 1990) (per se exclusion of atherosclerosis therapy); *Wilkins v. Sullivan*, 889 F.2d 135, 139 & n.6 (7th Cir. 1989) (exclusion of bilateral carotid body resection surgery).

"There is no hard and fast rule" for how the Secretary makes its "reasonable and necessary" determinations. *Banks v. Sec'y, Dept. of Health & Hum. Servs.,* 38 F.4th 86, 90 (11th Cir. 2022). Rather, "Congress has . . . delegated that decision to the Secretary's discretion." *Id.* at 90 (*citing Heckler v. Ringer*, 466 U.S. 602, 617 (1984)). The agency may, as it did here in the absence of an applicable Medicare National Coverage Decision or Local Coverage Decision, make its "reasonable and necessary" determination based on "case by case adjudication." *Banks,* 38 F.4th at 90 (citation omitted); *see* CMS Pub. 100-08, Medicare Program Integrity Manual (MPIM) Ch. 3 §§ 3.3.3, 3.6.2.2.[6] Under such review, agency adjudicators look to whether an item or service was (i) "safe and effective;" (ii) "not experimental or investigational;" and (iii) "appropriate." *Banks*, 38 F.4th at 90; MPIM Ch. 3 § 3.6.2.2; *see* also MPIM Ch. 13 § 13.5.4. "Appropriate," as that term is used here, involves examining whether the item or service was "furnished in accordance with accepted standards of medical practice"; and met but did not exceed the beneficiaries' medical needs. MPIM. Ch. 3 § 3.6.2.2; *see also* MPIM Ch. 13 § 13.5.4; AR at 12.

The Council undertook the appropriate analysis here. AR at 5, 8-13. After careful review of the entire record before it, the Council found that Plaintiff failed to demonstrate that its use of Procenta for these six beneficiaries satisfied any of the three

---

[6] CMS' manuals, including the Medicare Program Integrity Manual, are publicly available on CMS' website. https://www.cms.gov/medicare/regulations-guidance/manuals/internet-only-manuals-ioms

9

prongs. *Id.* The Council reviewed the additional information Plaintiff provided to support its use of Procenta, consisting of Procenta's Medicare billing code documentation and patent application, medical studies and literature, and an alleged letter issued by FDA regarding Procenta. AR at 8-12. The Council concluded this information failed to show Plaintiff's use of Procenta was medically reasonable and necessary. AR at 12.

The Council's decision is supported by substantial evidence. Plaintiff injected Procenta into the foot, ankle, or knee joints of the six beneficiaries to address musculoskeletal issues arising from either an osteophyte or enthesopathy. AR at 251-52 (Beneficiary R.M.); AR at 268-70 (Beneficiary P.V.); AR at 278, 280-81 (Beneficiary L.E.); AR at 293-94 (Beneficiary D.B.); AR at 311-312 (Beneficiary H.R.); AR at 1220 (Beneficiary K.C.); AR at 5.  Neither the application for a HCPCS billing code for Procenta nor the patent application for Procenta supports the use of the product as an injectable for musculoskeletal issues. AR at 10.

Lucina BioSciences, LLC submitted an HCPCS code application for Procenta specifically for use as "treatment of chronic, non-healing wounds." AR at 371; *see also* AR at 61, n.2. As the Council correctly noted, the application does not mention using Procenta as an injectable for musculoskeletal use. AR at 371, *see also* AR at 10. In fact, the application refers to Procenta as part of a class of "skin substitute" products. AR at 371. On the basis of that application, CMS created HCPCS Code Q4244. *Id.* It is that code Plaintiff billed to Medicare on the claims at issue. AR at 1166 -1172; *see e.g.* AR at 681. The Council also reviewed the patent application for

"the scaffold product [] commercially known as Procenta." AR at 415, *see* AR at 10. While the application offers that Procenta "may" be used to treat certain joint and bone conditions, AR at 417, "the clinical indication for the scaffold product is treatment of chronic or non-healing wounds." AR at 416, *see also* AR at 10.

The Council also found that the medical literature submitted by Plaintiff failed to support Plaintiff's claims. AR at 10-11, *see also* AR at 8-9, 426-667. When reviewing such a determination, this Court does "not . . . tender an independent judgment on the value and validity of the various scientific studies submitted. [The Court] ask[s] only whether the Secretary's assessment was a reasonable one." *Almy*, 679 F.3d at 305-06 (finding that the Secretary's determination that plaintiff failed to establish a medical device was safe and effective and not experimental or investigational was supported by substantial evidence); *see Int'l Rehab. Sci., Inc. v. Sebelius*, 688 F.3d 994 at 1003 (9th Cir. 2012) (noting that the Council had provided "adequate reasons" for not relying studies regarding the safety and non-experimental nature of a medical device)

Here, the Council's careful consideration of the medical literature was thorough and reasoned. The Council reviewed the 19 articles and studies submitted by Plaintiff. AR at 10-11. Each had material weaknesses. AR at 11. Several articles discussed studies conducted on rats rather than humans. AR at 538-551, 602-11, 630-641. Others identified inherent limitations in the research, for instance, acknowledging that further research would be necessary to determine the efficacy and safety of the product or use being tested. *See id.* at 591, 612, 642. One reported no findings at all. AR at 594-601. The Council acknowledged that one study reported positive results regarding an

11

allograft injection used to treat symptoms of knee osteoarthritis, but the study also explained that because of its methodology and because of variations in the type of product, "the conclusions of this study may not be applicable to other [hyaluronic acid] products." AR at 581. Importantly, as the Council noted, neither that study nor any of the other studies Plaintiff submitted "involve or mention Procenta, nor [did] any study evaluate the use of human placental derived allograft for treatment of the beneficiaries' specific conditions." AR at 11. Upon review of all these studies, the Council determined the articles failed to demonstrate that Plaintiff's use of Procenta was safe and effective, non-experimental and investigational, or appropriate for the beneficiaries' conditions. AR at 11-12.

Finally, the Council properly found that Plaintiff's representations regarding an FDA letter failed to support Plaintiff's use of Procenta in these six instances. Plaintiff asserted that the FDA issued a "Tissue Reference Group" (TRG) letter confirming that Procenta is compliant with Section 361 of the Public Health Services Act "when intended to serve as a cover, to offer protection from the surrounding environment, or to retain fluid." AR at 11; Doc. 34 at 15. However, as the Council noted, the TRG letter was not part of the administrative record before the ALJ or the Council and therefore could not be considered. AR at 11, 12 n.6. Plaintiff reasserts its argument here but points solely to the ALJ's discussion of the asserted FDA letter, not to any actual evidence in the record. Doc. 34 at 15.

As an initial matter, as Plaintiff acknowledges, the TRG letter speaks specifically to Procenta's use as a wound covering. Doc. 34 at 15. Thus, Plaintiff's

own contention recognizes the proper limits of Procenta's use. Moreover, as the Council correctly explained, an FDA designation does not mean Medicare would cover Procenta. AR at 11, 12. Procenta's compliance with section 361 would only be "*a* factor in making Medicare coverage decisions" *See* 42 C.F.R. § 405.201(a)(1) (emphasis added).[7] Instead, "[t]he Medicare statute clearly vests the Secretary with the authority to interpret when a device is 'reasonable and necessary' . . . The statue contemplates no role for the FDA[.]" *Almy*, 679 F.3d at 308 (rejecting a supplier's contention that the FDA's clearance of a device satisfied Medicare's "safe and effective" analysis). Due to an FDA confirmation's limited significance with respect to Medicare determinations, the Council properly found that the confirmation would not offer sufficient support for payment of Plaintiff's claims. AR at 11-12.

Plaintiff's arguments before this Court are unconvincing. Its chief assertion that the ALJ reached the correct decision misses the point. Doc. 34 at 11-17. The Council's decision is the Secretary's final decision, and this Court examines whether *that* decision is supported by substantial evidence. 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. 1395ff(b)(1)). Review under that standard "does not give the district court license to compare the agency decision on direct review with other agency decisions not on review and determine which is supported by more substantial evidence." *Int'l Rehab. Sci's*, 688 F.3d at 1002; *see also John Balko & Assocs., Inc. v. Sec'y*

---

[7] Plaintiff itself acknowledges this as well. Doc. 34 at 14 ("FDA market approval, or human cell and tissue product exemption is not a *sine qua non* element for Medicare coverage . . . .")

*U.S. Dep't of Health & Hum. Servs.*, 555 F. App'x 188, 194 (3rd Cir. 2014); *see also New LifeCare Hosps. of N.C. LLC v. Azar*, 466 F. Supp. 3d 124, 140 (D.D.C. 2020) ("The Court may only review a final agency action."). Indeed, as Plaintiff acknowledges, "The Council's decision constitutes CMS' final agency order[,]" and Plaintiff "filed the instant action seeking District Court review of the [Council's] Final Order." Doc. 34 at 8.

Plaintiff also suggests it used Procenta to treat pain and inflammation, and its usage was supported by nine of the medical papers reviewed by the Council. Doc. 34 at 18-20. As the Council found, Plaintiff's reliance is misplaced. AR at 11. Most importantly, none of the articles discuss Procenta. Beyond that, Articles "1," "6," and "8" involved studies of rats, not humans. AR at 538, 602, 630; *see also* AR at 11. Article "2" merely sought to establish a "classification system [that] will help researchers" choose treatment methods and allow for "efficient comparison and verification . . . of stem cell therapy for osteoarthritis." AR at 552-572; *see also* AR at 10-11. Article "3" explained that because of its methodology and the tested product, "the conclusions of this study may not be applicable to other . . . products." AR at 581; *see also* AR at 11. Article "4" looked at amniotic-based injections but explained that further studies "are necessary to validate its safety, efficacy, and long-term benefit." AR at 591; *see also* AR at 11. Article "5" described a study but contained no reported outcomes. AR at 594-601; *see also* AR at 11. Article "7" explained that "Further . . . clinical studies are necessary to properly evaluate the safety and efficacy of these tissues in orthopedic surgery." AR at 612; *see also* AR at 11. Article "9"

14

found an amnionic membrane "may be safe" as an alternative treatment for plantar fasciitis but also acknowledged it was "a pilot study" and the situation "requires further investigation." AR at 642; *see also* AR at 11. The Council, therefore, had substantial evidence for its assessment that the articles did not adequately support Plaintiff's use of Procenta as an injectable for the six beneficiaries.

In summary, the Council properly denied Medicare payment for the six claims at issue. Plaintiff injected Procenta into six beneficiaries for their musculoskeletal issues. Plaintiff's usage was not supported by Procenta's patent application or its Medicare billing coding application, both of which described Procenta as a covering for non-healing wounds. Nor did the medical literature offer sufficient support for Plaintiff's use of Procenta here. The Council therefore applied the proper Medicare authorities, and its factual findings are supported by substantial evidence in the administrative record. Its decision should be affirmed.

**II.     The Council's determination that Plaintiff is not entitled to Medicare payment under a limitation of liability should be affirmed.**

When the agency determines payment of services is not reasonable or necessary, the supplier will be liable for covering the cost of that service unless the supplier shows it (i) did not know; and (ii) could not have reasonably been expected to know that Medicare payment would not be made. 42 U.S.C. § 1395pp(a)(2). In such instances, the Secretary may still make payment.

Here, the Council correctly determined that Plaintiff was not entitled to Medicare payment under section 1395pp. AR at 13-14. The Council's determination

15

is supported by substantial evidence and merits deference from this Court. *See Owens v. Heckler*, 748 F.2d 1511, 1514 (11th Cir. 1984) ("[W]e are to determine whether substantial evidence supports the Secretary's conclusion that the claimant was not without fault in causing the overpayment."). As previously discussed, Plaintiff's decision to inject Procenta into the beneficiaries' joints turns a blind eye to the clinical indication of Procenta as a wound covering. Moreover, medical documentation fails to demonstrate that Plaintiff's use of Procenta as a musculoskeletal injectable was consistent with established medical standards for the treatment of these beneficiaries.

The Eleventh Circuit rejected application of section 1395pp in a similar case. *Vitreo Retinal Consultants of the Palm Beaches v. U.S. Dep't of Health & Hum, Servs.* 649 F. Appx. 684 (11th Cir. 2016). There, a practitioner administered a single-use eye retinal injection to multiple patients, received Medicare payments which were later determined to be overpayments, and argued it was entitled to keep the payments on the basis of 42 U.S.C. § 1395pp. *Id.* at 687-88, 690. The Eleventh Circuit held that the practitioner did not have a reasonable basis to assume the payments were proper since it administered the drug contrary to instructions and because the practice of doing so was not based on established medical practice. *Id*.

Plaintiff asserts that the Council has "turned the statute on its head" by requiring Plaintiff to prove that it did not know or should have known the treatments would not be paid. Doc. 34 at 22. Plaintiff argues instead that it should be paid if "nowhere in any statute, rule, regulation, manual, or guidance, does CMS disallow payment for

Procenta when used to treat musculoskeletal conditions, or podiatric pain and inflammation." Doc. 34 at 24.

The Council acknowledged that CMS had not issued guidance specifically stating Medicare would not cover amniotic fluid products for orthopedic joint pain. AR at 14. But as the Council explained, Medicare is a defined benefits program. A supplier bears the burden of affirmatively establishing that Medicare payment is due under the applicable statute, regulations, guidance materials, and standards of medical practice. 42 U.S.C. § 1395*l*(e); 42 C.F.R. §424.5(a)(6). Medicare-participating entities, such as Plaintiff, are deemed to have constructive knowledge of "CMS notices, including manual issuances, bulletins, or other written guides or directives" indicating the requirements for receiving Medicare payment. 42 C.F.R. § 411.406(e). Moreover, suppliers are considered to know that Medicare payment will not be made for an item or service furnished in a manner that does not comport with locally accepted standards of practice. CMS Pub. 100-4, Medicare Claims Processing Manual (MCPM), Ch. 30 § 30.2.3; *see also* AR at 13. As such, Plaintiff was, or should have been, aware of the information it would need to support its claims before the agency. Plaintiff not only failed to have such material, it attempted to rely on material that flatly contraindicates Plaintiff's use of Procenta.

Plaintiff's reliance on the existence of the Procenta billing code, s*ee* Doc. 34 at 24, is not only misplaced but supports the Council's determination. Procenta's code application was published in 2020. AR at 330, 371. The application described Procenta as a wound covering and explained a Procenta-specific code was needed because codes

17

for *"skin substitute*[s]" are product- and brand-specific. AR at 371. Despite this, in 2022 Plaintiff submitted the Medicare claims at issue, using that billing code to seek Medicare payment for a use that deviated from Procenta's indicated use.

Similarly, Procenta's patent application explained that Procenta was clinically indicated as a covering for non-healing wounds. AR at 416. The medical literature also fails to persuade that use of Procenta as an injectable for musculoskeletal purposes was an established medical treatment that would meet Medicare requirements. *See* AR at 11-12. Plaintiff knew, or at least had constructive knowledge, that the Secretary had not issued a National Coverage Determination or Local Coverage Determination authorizing payment for Procenta used for musculoskeletal purposes. Moreover, Plaintiff knew or had constructive knowledge of the review criteria Medicare would apply when making a case-by-case adjudication of Plaintiff's claims. *LivinRite, Inc. v. Azar*, 386 F. Supp. 3d 644, 666 (E.D. Va. 2019) ("[A] Medicare-certified provider's constructive notice of the criteria for coverage in Medicare guidance is sufficient to demonstrate that the provider 'could have been expected to have known that the services were excluded from coverage.'"). Accordingly, the Council properly determined that Plaintiff failed to show that Plaintiff did not know or could not have reasonably known that Medicare would not pay for these treatments. AR at 14. The Council's determination is proper and supported by substantial evidence. That decision should likewise be affirmed.

## CONCLUSION

The Secretary respectfully submits that the final administrative decision of the Secretary, issued by the Council, should be affirmed.[8]

DATED this 30th day of May, 2025.

                                        Respectfully submitted,

                                        GREGORY W. KEHOE
                                        United States Attorney

By:   _/s/ Chad C. Spraker_
       CHAD C. SPRAKER
       Assistant United States Attorney
       USA No. 198
       2110 First Street, Ste. 3-137
       Fort Myers, Florida 33901
       Telephone: 239-461-2200
       Fax: 239-461-2219
       Email: chad.spraker@usdoj.gov

---

[8] Defendants contend the written record is adequate for ruling on the present action, and oral argument is not necessary.