UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FAMILY FOOT AND LEG CENTER, PA,

    Plaintiff,

v.                                                                                      Case No. 2:24-cv-547-SPC-KCD

ROBERT F. KENNEDY, JR., Secretary of
the United States Department of Health and
Human Services; and MEHMET OZ, M.D.,
Administrator for the Centers for Medicare
and Medicaid Services,

    Defendants.

_____/

**PLAINTIFF'S REPLY BRIEF**

COMES NOW, the Plaintiff, FAMILY FOOT AND LEG CENTER, P.A. ("FFLC"), and files this Reply Brief, stating as follows:

**I. HHS ARGUMENTS ON MEDICAL NECESSITY ARE INAPPOSITE**

1.    The Administrative Law Judge's Amended Decision (AR 81-99) satisfactorily addresses nearly all of the points raised by HHS in its Brief. Therefore, Plaintiff will rely on the ALJ's Amended Decision and Plaintiff's Initial Brief on the issue of medical necessity in rebuttal to HHS' Brief, incorporating them herein.

2.    Further, on page 2 of its Brief HHS states as follows:

> "Procenta was designed to treat non-healing wounds. Plaintiff, however, injected Procenta into the joints of Medicare beneficiaries to treat musculoskeletal issues."

3. The Council's decision (AR 10) acknowledges that Procenta's patent application states that Procenta may be used to treat joint and arthritic conditions.

4. The Council also noted that the HCPCS code for Procenta does <u>not</u> opine on the use of Procenta for musculoskeletal conditions (AR 10).

5. FFLC's use of Procenta is supported by authoritative evidence and is generally accepted in the medical community. It would meet with exponentially wider acceptance if Medicare would simply expand coverage for amniotic cells treatments.

## II. **PLAINTIFF IS ENTITLED TO A "LIMITATION ON LIABILITY"**

### A. **HHS' Admission Of No Prior Guidance:**

6. First and foremost, it must be noted to the Court that the Medicare Appeals Council admits in its decision at AR 14 as follows:

> "We acknowledge that Medicare has not issued guidance specifically concerning the non-coverage of amniotic fluid products for the treatment of orthopedic joint pain to or during the dates of service for the beneficiaries at issue."

7. Despite the foregoing admission, in its Brief (p. 15), HHS maintains that FFLC is still not entitled to safe harbor under the "Limitation on Liability Where Claims Are Disallowed" provision of 42 U.S.C. § 1395pp(a)(2) (citing *Vitreo Retinal Consultants of the Palm Beaches v. U.S. Dep't. of Health & Hum. Servs.*, 649 F. Appx. 684 (11th Cir. 2016)). Plaintiff respectfully disagrees.

### B. **Statutory Framework Governing Non-Liability:**

8. Section 1395pp(a)(2) states in pertinent part as follows:

> (a) Conditions prerequisite to payment for items and services notwithstanding determination of disallowance

Where--

(2) both such individual and such provider of services or such other person, as the case may be, did not know, and could not reasonably have been expected to know, that payment would not be made for such items or services under such part A or part B…

9.  Although HHS states that "Plaintiff was, or should have been, aware of the information it would need to support its claim before the agency" (Brf. p. 17), HHS does not adequately explain "how" and "why" it arrived at this conclusion.

10. Further, HHS did not apply the correct criteria. There are two controlling standards which are applicable to the question of whether FFLC is entitled to a "limitation on liability." The first is 42 C.F.R. § 411.406 (Criteria for determining that a provider, practitioner, or supplier knew that services were excluded from coverage as custodial care or as not reasonable and necessary); and the second is the Health Care Financing Administration's (HCFA) Ruling No. 95-1 (12/1995)(Requirements for Determining Limitation on Liability).

**C.   42 C.F.R. § 411.406 Criteria:**

11. Code of Federal Regulation § 411.406 states as follows:

(a) *Basic rule*. A provider, practitioner, or supplier that furnished services which constitute custodial care under § 411.15(g) or that are not reasonable and necessary under § 411.15(k) is considered to have known that the services were not covered if any one of the conditions specified in paragraphs (b) through (e) of this section is met.

(b) *Notice from the QIO, intermediary or carrier*. The QIO, intermediary, or carrier had informed the provider, practitioner, or supplier that the services furnished were not

>covered, or that similar or reasonably comparable services were not covered.

*(FFLC was <u>not</u> so informed).

>(c) *Notice from the utilization review committee or the beneficiary's attending physician.* The utilization review group or committee for the provider or the beneficiary's attending physician had informed the provider that these services were not covered.

*(FFLC was <u>not</u> so informed).

>(d) *Notice from the provider, practitioner, or supplier to the beneficiary.* Before the services were furnished, the provider, practitioner or supplier informed the beneficiary that—
>
>(1) The services were not covered; or
>(2) The beneficiary no longer needed covered services.

*(FFLC did <u>not</u> so inform the beneficiary).

>(e) *Knowledge based on experience, actual notice, or constructive notice.* It is clear that the provider, practitioner, or supplier could have been expected to have known that the services were excluded from coverage on the basis of the following:
>
>(1) Its receipt of CMS notices, including manual issuances, bulletins, or other written guides or directives from intermediaries, carriers, or QIOs, including notification of QIO screening criteria specific to the condition of the beneficiary for whom the furnished services are at issue and of medical procedures subject to preadmission review by a QIO.

*(FFLC did <u>not</u> receive any of the above. The Agency also acknowledged that none existed at the time of treatment).

>(2) Federal Register publications containing notice of national coverage decisions or of other specifications regarding noncoverage of an item or service.

*(None to FFLC's knowledge. The Agency also acknowledged that none existed at the time of treatment).

> (3) Its knowledge of what are considered acceptable standards of practice by the local medical community.

*(FFLC's administration of Procenta exceeded the acceptable local standards).

12.     Consequently, HHS has not satisfied the criteria to establish constructive knowledge on the part of FFLC as to non-coverage for Procenta.

**D.     (HCFA) Ruling No. 95-1 Criteria:**

13.     The second published standard by which to analyze whether FFLC knew or should have known that the treatment of its patients with Procenta would not be covered is the Health Care Financing Administration's (HCFA) Ruling No. 95-1 (12/1995). This HCFA ruling states in pertinent part:

> IV. *Determining Knowledge (applying criteria set forth in 42 C.F.R. 411.404):*
>
> "For the protection under the limitation on liability provision to be afforded, lack of prior knowledge that Medicare payment for the item or service would be denied must first be established. Two determinations must be made to establish knowledge:
>
> (1) Whether and when the beneficiary knew or should have known that Medicare payment for the item or service would be denied, and
>
> (2) whether and when the provider, practitioner, or other supplier knew or should have known that Medicare payment for the item or service would likely be denied.
>
> The principles for determining knowledge described below apply to determinations of knowledge with respect to denials under section 1879(a) through (g) of the Act for

5

>which Medicare payment may be made, as well as to those under section 1879(h) of the Act, for which refunds may be required."

*See* HCFAR 95-1, page 15.

>IV(B)(2) *(Criteria For Determining Practitioner and Other Supplier Knowledge):*
>
>"In accordance with 42 CFR 411.406 (Criteria for determining that a provider, practitioner, or other supplier knew that items or services were excluded from coverage as custodial care or as not reasonable and necessary) and §7300.5 of the Medicare Carriers Manual, evidence that the practitioner or other supplier did, in fact, know or should have known that Medicare would not pay for a service or item includes:
>
>• A Medicare contractor's prior written notice to the practitioner or other supplier of Medicare denial of payment for similar or reasonably comparable services or items;

*(FFLC did not receive prior notice).

>• Our general notices to the medical community of Medicare payment denial of services and items under all or certain circumstances. (Our notices include, but are not limited to, manual instructions, bulletins, carriers' written guides, and directives); and

*(None to FFLC's knowledge. The Agency also acknowledged that none existed at

the time of treatment).

>• Provision of the services and items was inconsistent with acceptable standards of practice in the local medical community (refer to section V. of this Ruling). If any of the circumstances described above exists, a practitioner or other supplier is held to have knowledge."

*See* HCFAR 95-1, page 19.

*(FFLC's administration of Procenta met the acceptable local standards).

> V. <u>ACCEPTABLE STANDARDS OF PRACTICE-- APPLICATION</u>
>
> "In situations in which services or items furnished do not meet locally acceptable standards of practice, the provider, practitioner, or other supplier is considered to have known that Medicare payment for the services or items would be denied. Providers, practitioners, and other suppliers are always responsible for knowing locally acceptable standards of practice; their local licensure is premised on the assumption that they have such knowledge. Medicare payment to providers, practitioners, or other suppliers is premised on the presumption that they have such knowledge, as evidenced by their licensure. No other evidence of knowledge of local medical standards of practice is necessary. Medicare contractors, in determining what "acceptable standards of practice" exist within the local medical community, rely on published medical literature, a consensus of expert medical opinion, and consultations with their medical staff, medical associations, including local medical societies, and other health experts. "Published medical literature" refers generally to scientific data or research studies that have been published in peer-reviewed medical journals or other specialty journals that are well recognized by the medical profession, such as the "New England Journal of Medicine" and the "Journal of the American Medical Association." By way of example, consensus of expert medical opinion might include recommendations that are derived from technology assessment processes conducted by organizations such as the Blue Cross and Blue Shield Association or the American College of Physicians, or findings published by the Institute of Medicine." (HCFAR 95-1, page 30).

*(FFLC met or exceeded the acceptable standards).

14. FFLC also provided to the Agency at least nine (9) scientific papers on using amniotic cells to treat similar conditions as those suffered by FFLC's patients.

7

E. <u>**HHS' Caselaw Is Distinguishable:**</u>

15. HHS' citations to *Vitreo Retinal Consultants of the Palm Beaches v. U.S. Dep't. of Health & Hum. Servs.*, 649 F. Appx. 684 (11th Cir. 2016) and *LivinRite, Inc. v. Azar*, 386 F. Supp. 3d 644, 666 (E.D. Va. 2019) are distinguishable.

16. The provider in *Vitreo* did not follow the label's instructions limiting dosage to one per vial. Instead, the provider treated up to three patients from a single vial and then billed Medicare for the three separate treatments. Medicare only reimbursed the provider for one, not the three, treatments. *Id*. at 687-688.

17. Further, as noted by the Court, there was a "2008 Coverage Determination expressly incorporating the drug's labeling." *Id.* at 694.

18. Of significant importance is the *Vitreo* Court's holding that:

> Section 1395gg of the Medicare Act provides that the Secretary may waive recoupment where the provider was "without fault" when it received overpayment. 42 U.S.C. § 1395gg. The CMS Financial Management Manual instructs that a party is "without fault" when it "exercised reasonable care in billing for, and accepting the payment." Pub. No. 100–06, Ch. 3, § 90. "Reasonable care," in turn, requires that the provider "made full disclosure of all material facts" and that, "[o]n the basis of information available to it, ... [the provider] had reasonable basis for assuming that the payment was correct, or, if it had reason to question payment; it promptly brought the question to [Medicare's] attention."

*Id*. at 697 (see also *Hospice of East Texas v. Secretary of US Dept. of HHS*, 2025 WL 1062504 *36 (E.D. Texas Feb. 21, 2025)(citing *Vitreo*, *supra*).

19. There was no question that FFLC "exercised reasonable care in billing for, and accepting the payment" and, therefore, is without fault. *Vitreo* at 697.

8

20.     The fact that Medicare for a period of several years reimbursed FFLC for administering Procenta to a significant number of patients also weighs heavily in its favor. *See Yale-New Haven Hosp., Inc. v. Thompson*, 162 F. Supp. 2d 54, 68 (D. Conn. 2001)("The fact that the intermediaries continued to pay for these services for a period of eight years after the manual provision was disseminated could reasonably be interpreted by Yale that payment would continue to be made").

21.     In *LivinRite,* the Court held that the provider was not entitled to limitation of liability because there was published guidance that was in effect when the services were provided. *Id*. at 665. As previously noted, the Medical Appeals Council acknowledged that no prior notice concerning the non-coverage of amniotic fluid products for the treatment of orthopedic joint pain was issued. (AR 14) Therefore, *LivinRite* is distinguishable because in that case there was prior notice.

22.     Most recently, in *Hospice of East Texas v. Secretary of US Dept. of HHS*, 2025 WL 1062504 (E.D. Texas Feb. 21, 2025), the Court stated:

> The undersigned is skeptical of this rationale: If reviewing "manuals, bulletins, and written guidelines from CMS" is sufficient to defeat limitation under Section 1879 and being "a participating provider in the Medicare program" is sufficient to defeat waiver under Section 1870, then those sections would rarely, if ever, be applied.

*Id*. at *36. *See also Advanced Diabetes Treatment Centers, L.L.C. v. Sebelius*, No. 09-61698, 2011 WL 13268857, at *18 (S.D. Fla. Apr. 7, 2011), report and recommendation adopted, No. 09-61698, 2011 WL 13268858 (S.D. Fla. Aug. 25, 2011).

9

## CONCLUSION

23. The Medicare Appeal Council's determination that FFLC should have known that its administration of Procenta would not be covered is not supported by substantial evidence.

24. Moreover, FFLC satisfies each and every criteria for its liability to be limited under 42 U.S.C. § 1395pp, 42 C.F.R. § 411.406, and HCFA Ruling No. 95-1.

25. It would be financially devastating to FFLC, a small locally owned podiatry practice, if it did not receive safe harbor under the "Limitation on Liability" provisions. It is to protect such medical practitioners that Congress enacted the "Limitation on Liability" provisions contained in 42 U.S.C. § 1395pp(a)(2).

26. Respectfully, Plaintiff requests that judgment be entered for the Plaintiff and that Plaintiff's liability be so limited.

## CERTIFICATE OF SERVICE

I certify that on this 18th day of June 2025, I caused the foregoing to be filed with the U.S. District Court, Middle District of Florida, by using the CM/ECF system, which will send a notice of electronic filing to any counsel of record.

EDWARD L. LARSEN, ESQ., P.A.

By: */s/ Edward L. Larsen*
Edward L. Larsen, Esq.
Counsel for Plaintiff
Florida Bar No.: 16700
2390 Tamiami Trail N., Suite 202
Naples, Florida 34103
(239) 643-0100
Ed@EdwardLarsenEsq.com