**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

FAMILY FOOT AND LEG CENTER, P.A.,

Plaintiff,

v. No. 2:24-cv-00547-SPC-KCD

ROBERT F. KENNEDY, JR., Secretary,
U.S. Department of Health and Human
Services; and Mehmet Oz, M.D., Administrator
for the Centers for Medicare & Medicaid Services,

Defendants.
_______________________________________/

**SURREPLY OF THE SECRETARY OF THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES**

Plaintiff argues the Medicare Appeals Council "admits" that "Medicare has not issued guidance specifically concerning the non-coverage of amniotic fluid products for the treatment of orthopedic joint pain . . . ." (Doc. 42 at 2.) Taken alone, the quotation from the Medicare Appeals Council is potentially misleading. Since the inception of the Medicare program, it has always been the case that Medicare pays for "some but not all of the vast spectrum" of healthcare items, services, and usages. *See Bussey v. Harris*, 611 F.2d 1001, 1006 (5th Cir. 1980). Medicare law has never required that the Secretary issue a coverage determination for each of the myriad items and services that various healthcare practitioners may choose to use in various ways. *See Int'l Rehab. Sci., Inc. v. Sebelius*, 688 F.3d 994, 1001

(9th Cir. 2012) ("[W]hile the [Medicare program] *may* make coverage determinations via up-front rules, it is not *required* to do so") (emphases in original); *Almy v. Sebelius*, 679 F.3d 297, 303 (4th Cir. 2012) (noting the use of coverage determinations is a matter of the Secretary's discretion).

In the absence of a coverage determination addressing the use of Procenta (a skin substitute for non-healing wounds) as an injectable for musculoskeletal pain, it became Plaintiff's burden to establish this use as safe and effective, not experimental, and furnished in accordance with accepted standards of medical practice. *See* Medicare Program Integrity Manual, CMS Publication No. 100-08, Chapter 3 § 3.6.2.2; Medicare Claims Processing Manual, CMS Publication No. 100-04, Chapter 30, § 30.2.3 (describing the quality of the published medical literature and consensus of expert medical opinion necessary to establish accepted standards of practice).[1] But the evidence Plaintiff produced fell short of showing what it needed to establish. As noted in the Secretary's principal brief, the studies and papers offered by Plaintiff did not demonstrate to the Medicare Appeals Council that Plaintiff's use of Procenta was safe and well-accepted in the general medical community. *See* Doc. 39 at 14-15.

---

[1] The significance of the criteria and guidelines set forth in the Medicare manuals is well-established. *See, e.g., Miss. Care of Morton, L.L.C. v. Sebelius*, 449 F. App'x 341, 345 n.14 (5th Cir. 2011) (observing that "[m]any courts, including this one, have recognized the importance of Medicare manuals in the administration of the Medicare program . . . .") (citations omitted). The manuals are publicly available online at https://www.cms.gov/medicare/regulations-guidance/manuals/internet-only-manuals-ioms.

Given the weaknesses of the papers submitted by Plaintiff, the Medicare Appeals Council had substantial evidence to conclude that Plaintiff should have known the criteria for Medicare payment were not established for Plaintiff's use of Procenta, a skin substitute, as an injectable for orthopedic purposes.

Plaintiff's assertion in its reply that use of Procenta for such purposes "would meet with exponentially wider acceptance if Medicare would simply expand coverage[,]" *see* Doc. 42 at 2, does not avail Plaintiff's cause. The purpose of the Medicare program is not to promote the use of a particular item, service, or usage. The program's purpose is solely to pay for those healthcare services and items that are reasonable and necessary, *see* 42 U.S.C. 1395y(a)(1), as contemplated under the criteria enunciated in the law, manuals, and other guidelines by which the program is administered, and as generally accepted as safe and effective by the medical community. As the Supreme Court cautioned years ago, anyone who seeks public dollars from the Medicare program must expect to be held to no less than the most demanding standards. *Heckler v. Cmty. Health Servs. of Crawford Cnty. Inc.*, 467 U.S. 51, 63 (1984). Plaintiff has failed to meet its burden.

Plaintiff now argues that it is entitled to a waiver of liability for its overpayment under 42 U.S.C. § 1395pp(a) because Plaintiff received Medicare payment on other claims for Procenta. Doc. 42 at 9. As an initial matter, Plaintiff's assertion does not point to any evidence in the Administrative Record. In this civil action, the Court's consideration is restricted to "the transcript of the record" filed by the Secretary when he answered the complaint. *See* 42 U.S.C. § 405(g) (incorporated

for Medicare purposes by 42 U.S.C. § 1395ff(b)(1)). Furthermore, Plaintiff did not make the argument in its principal brief to this Court. Plaintiff cannot do so now, as the Court should not address an argument advanced for the first time in a reply. *Big-Top Koolers, Inc. v. Circus-Man Snacks, Inc.*, 528 F.3d 839, 844 (11th Cir. 2008); *see also United States v. Levy*, 379 F.3d 1241, 1244 (11th Cir. 2004) ("[This court] repeatedly has refused to consider issues raised for the first time in [a] reply brief."). For multiple reasons, then, Plaintiff's attempt to raise a new argument now should not be considered.

Plaintiff's assertion also disregards the reality of how Medicare claims are processed. Because of the volume of Medicare claims filed each year, fewer than two percent of the claims can be reviewed substantively on the front end. *United States v. Bergman*, 852 F.3d 1046, 1054 (11th Cir. 2017). The vast majority of claims are paid automatically as long as no irregularity on the face of the claim form prevents the claim from being processed. *Fla Med. Ctr. of Clearwater, Inc. v. Sebelius*, 614 F.3d 1276, 1279 n.4 (11th Cir. 2010).[2] For this reason, it is unwarranted to assume that a claim payment, processed and paid automatically, represents an approval of the substantive propriety of the claim.

The Court should also not consider Plaintiff's newly raised argument that the Secretary failed to properly apply Health Care Financing Administration Ruling No. 95-1. Doc. 42 at 5-7. Plaintiff did not raise this contention previously and cannot do

---

[2] These payments remain subject, however, to potential later review or audit, for a period of several years. *See* 42 C.F.R. § 405.980 (reopening of claim payments).

so for the first time in its reply. In any event, the Ruling's discussion regarding a provider's knowledge was drafted "in accordance with 42 CFR 411.406." *See* Doc. 42 at 6 (quoting from Ruling No. 95-1). The Medicare Appeals Council duly relied upon this very regulation in considering whether Plaintiff was entitled to a waiver of liability under 42 U.S.C. § 1395pp(a). AR at 13.

The Secretary respectfully submits that the Medicare Appeals Council's decision was supported by substantial evidence and comported with the applicable legal standards. The decision should be affirmed.

DATED this 11th day of July, 2025.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

By: */s/Chad C. Spraker*
CHAD C. SPRAKER
Assistant United States Attorney
USA No. 198
2110 First Street, Ste. 3-137
Fort Myers, Florida 33901
Telephone: 239-461-2200
Fax: 239-461-2219
Email: chad.spraker@usdoj.gov